IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DOUGLAS A. HOGLAN,                    )
      Plaintiff,                          )       Case No. 7:18-cv-00140
                                      )
v.                                    )
                                      )       By: Michael F. Urbanski
RANDALL MATHENA, et al.,              )       Chief United States District Judge
      Defendants.                         )

## MEMORANDUM OPINION

Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against multiple individuals employed by or associated with the Virginia Department of Corrections ("VDOC").[1] Hoglan's second amended complaint asserts various violations of his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. The case is presently before the court on the defendants' second motion for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 67, and Hoglan's motion for relief under Rule 56(d), ECF No. 86. For the reasons set forth below, the defendants' motion will be granted in part and denied without prejudice in part, and Hoglan's motion will be granted in part and denied in part.

## Procedural History

The court begins by summarizing the relevant aspects of this case's lengthy procedural history. Hoglan filed his original complaint against the defendants on March 30, 2018. ECF

---

[1] The remaining defendants are as follows: Randall Mathena, A. David Robinson, Bernard Booker, Randy Bateman, Teacarla Wade, D. Perry, Melvin Davis, Craig M. Schneider, Heather Boyd, Curly R. Sellers, Hayley Shephard, Charles Crumpler, Hearing Officer Sims, Marcus Elam, Defendant Ponton, and John Doe, an unidentified institutional investigator.

No. 1. The case was initially assigned to Senior United States District Judge Jackson L. Kiser. On June 6, 2019, Judge Kiser granted the defendants' partial motion to dismiss for failure to state a claim. ECF No. 28.

On July 29, 2019, the defendants filed their first motion for summary judgment. ECF No. 34. Hoglan filed a response in opposition to the motion on August 30, 2019, in which he argued that discovery was still outstanding and that the defendants' motion should be denied as premature under Rule 56(d). ECF No. 44. Thereafter, the defendants filed a motion to stay discovery. ECF No. 47.

On January 8, 2020, prior to a ruling on the foregoing motions, Hoglan moved to amend the complaint. ECF No. 51. On February 20, 2020, Judge Kiser granted the motion to amend and dismissed without prejudice the defendants' motion for summary judgment and motion to stay discovery. ECF No. 53. That same day, the Clerk docketed the amended complaint. ECF No. 54.

On March 30, 2020, Hoglan moved to supplement the amended complaint. ECF No. 55. That motion was granted on April 13, 2020, and the Clerk was directed to redocket the amended complaint and the proposed supplement as the second amended complaint. ECF No. 59. Shortly thereafter, Hoglan propounded additional discovery requests. ECF Nos. 61–64.

On May 13, 2020, the defendants filed their second motion for summary judgment, which is presently before the court. ECF No. 67. The defendants argue that a number of counts are subject to dismissal for failure to state a claim and that Hoglan's allegations are

insufficient to state a claim against certain defendants. As to other counts, the defendants rely on affidavits to support their motion for summary judgment.

On May 21, 2020, the defendants moved to stay discovery on several grounds. ECF No. 71. That motion was denied by a United States Magistrate Judge on March 31, 2021. ECF No. 75.

In the meantime, the case was transferred to United States District Judge Thomas T. Cullen. ECF No. 74. By order entered March 31, 2021, Judge Cullen took the defendants' motion for summary judgment under advisement, referred the case to a magistrate judge for mediation, and stayed the case pending further order. ECF No. 78. The parties subsequently participated in a settlement conference on July 22, 2021, which proved unsuccessful. ECF No. 83.

On August 2, 2021, Hoglan filed a response in opposition to the defendants' second motion for summary judgment in which he argues that the motion should be denied as premature under Rule 56(d) (hereinafter "Rule 56(d) motion"). ECF No. 86. More specifically, Hoglan contends that "discovery is still in its infancy," that he is "still awaiting a great deal of discovery relevant to genuine issues of material fact," and that restrictions resulting from the COVID-19 pandemic have prevented him from obtaining declarations from witnesses. Id. at 7–8.

On October 8, 2021, the defendants filed a response to Hoglan's Rule 56(d) motion. ECF No. 92. The defendants argue that Hoglan does not need discovery to respond to the portions of the motion for summary judgment that seek dismissal of certain counts and defendants for failure to state a claim. They suggest that Hoglan be given the opportunity to

respond to those arguments and request that "[o]nce he has done so, and once the Court has ruled, . . . the Court . . . allow the parties time to re-visit the proper scope of discovery and allow them time to complete it." Id. at 5–6. The defendants note that their attorney "believes that she and Hoglan can resolve the remaining discovery requests amicably and without further court intervention." Id. at 6.

On November 1, 2021, Hoglan filed a "rebuttal to defendants' response" in which he "affirms defense counsel's position that there is a cordial and professional relationship between them." ECF No. 95. He also adopts the defendants' position that "all other matters should be tabled until after the Court rules on [the sufficiency of his claims]." Id. at 2. Hoglan subsequently filed a "memorandum on the sufficiency of his complaint's claims" on December 13, 2021. ECF No. 96.

The case was transferred to the undersigned on January 10, 2022. ECF No. 97. After reviewing the record, the court lifted the stay and reinstated the case to the active docket. ECF No. 99. The case is now before the court on the defendants' second motion for summary judgment and Hoglan's Rule 56(d) motion.

## Factual Background

Consistent with the position taken by both sides, the court will only consider the portions of the defendants' second motion for summary judgment that seek dismissal for failure to state a claim. Consequently, the court will not recite all of the factual allegations and evidence here. Instead, the court will summarize the factual allegations necessary to address the defendants' pleading challenges.

Hoglan is serving a twenty-year sentence for multiple state convictions, including three counts of aggravated sexual battery, two counts of possession of child pornography, and one count of unlawful filming or photographing. See Commonwealth v. Hoglan, Case Nos. CR07000982, CR070001101, CR08000102, and CR08000417, available at https://eapps.courts.state.va.us/ocis/search (last visited Mar. 2, 2022). He is currently incarcerated at Green Rock Correctional Center ("Green Rock"), where the events giving rise to this action allegedly occurred. 2d Am. Compl., ECF No. 59, at ¶ 3.

Prior to being transferred to Green Rock in August 2013, Hoglan was placed on a treatment plan by Qualified Mental Health Professional ("QMHP") Heather Boyd, which prohibited him from possessing certain materials "under the pretext of being necessary for rehabilitative purposes." Id. ¶¶ 23, 29. Following his transfer to Green Rock, Craig Schneider, another QMHP, determined that the "treatment plan prohibition was unnecessary for Hoglan." Id. ¶ 30. "From October 2013 through April 2016, Hoglan was not under any treatment plan prohibition . . . ." Id. ¶ 31.

On December 28, 2015, Hoglan filed a civil action under 42 U.S.C. § 1983 alleging "constitutional violations of his rights and those not before the Court regarding deprivation of personal property, failure of due process, and unlawful censorship by [David Robinson,[2] other VDOC officials,] and their subordinates." Id. ¶ 37 (citing Hoglan v. Robinson, No. 7:15-cv-00694 (W.D. Va.) (hereinafter the "694 Case")). On February 8, 2016, Judge Kiser directed the Clerk to cause the defendants named in the 694 Case to be notified of the action.[3] Id.

---

[2] Robinson is identified as the Chief of Corrections Operations for the VDOC. 2d Am. Compl. ¶ 6.

[3] Robinson is the only defendant in the 694 Case who is also named as a defendant in the instant action. See Hoglan v. Robinson, No. 7:15-cv-00694 (W.D. Va.).

At the time the 694 Case was filed, "Hoglan was not under any restrictions different from the typical VDOC prisoner." Id. ¶ 38. After being notified of the action, however, the defendants named in the 694 Case "brought up the Boyd prohibition" in their answer to the complaint, even though it had been terminated by Schneider. Id. ¶ 39.

Additionally, in April 2016, approximately ten days after the answer was filed, Teacarla Wade "tried bullying Hoglan into signing off on a [new] prohibition" in his case plan (hereinafter the "Mathena Prohibition"), which prohibited Hoglan from "viewing or possessing any publications, materials, or photos which may be detrimental to the case plan or that may promote deviant behaviors including sexually deviant behaviors." Id. ¶¶ 46–47 (internal quotation marks omitted). When Hoglan informed Wade that the prohibition was a retaliatory ploy by the defendants in the 694 Case, Wade responded that it was not optional and that he did not have any say in the matter. Id. ¶ 48. When asked to explain the terms of the prohibition, Wade was unable to do so. Id. ¶ 49. In response to further questions from Hoglan, Wade indicated that Bernard Booker, the Warden at Green Rock, and Randy Bateman, the Institutional Program Manager, were aware of the prohibition but that she did not know who had ordered it. Id. ¶ 50. Similarly, Hoglan's counselor, D. Perry, "said she was aware of the order for the treatment plan prohibition, but adamantly stated that she did not initiate it, nor did she want to become involved." Id. ¶ 52. Wade, Bateman, and Perry directed Hoglan to contact Booker. Id. When Hoglan did so, Booker indicated that Randall Mathena "had ordered the prohibition through an email." Id. ¶ 53. Hoglan explained to Booker that "his rights and VDOC procedures were being violated." Id. Although Booker appeared sympathetic, "he said that he was just following orders, and that his position was to allow

6

Hoglan and 'Richmond [VDOC headquarters] to fight it out.'" Id. (alteration in original). Hoglan has since obtained copies of email communications revealing that "Defendant Robinson ordered Defendant Mathena to have the restrictions (the Mathena Prohibition) added to Hoglan's case plan." Id. ¶ 63; see also id. ¶ 67 (quoting from an email in which Bateman instructed Wade not to tell Hoglan that "Dave Robinson told us to do it").

On December 27, 2016, Hoglan filed another civil rights action challenging "censorship policies and practices imposed and condoned by [prison officials]," including some of the same defendants named in this action. Id. ¶ 72 (citing Hoglan v. Robinson, 7:16-cv-00595 (W.D. Va.) (hereinafter the "595 Case")).[4] In April 2017, the defendants named in the 595 Case "returned their waivers of service acknowledging that [they were] aware that Hoglan had filed an additional federal 1983 lawsuit." Id. ¶ 74.

"From the implementation of the Mathena Prohibition on April 14, 2016 up until October 11, 2017," Green Rock staff did not enforce the restrictions, bar any materials, or "seize[] any of Hoglan's property under the color of the Mathena Prohibition." Id. ¶ 54; see also id. ¶ 57 ("Hoglan was able to have the sexually suggestive materials ordered for himself up until October 11, 2017."). Nonetheless, Hoglan alleges that he "was distressed that the Mathena Prohibition was over his head, and was always 'waiting for the []other shoe to drop.'" Id. ¶ 54. According Hoglan, that occurred on October 11, 2017, when Green Rock employees "barred materials and seized items from Hoglan's personal property under the color of the Mathena Prohibition." Id. ¶ 57.

---

[4] In addition to Robinson, Defendants Marcus Elam, Charles Crumpler, Bernard Booker, Melvin Davis, and Hearing Officer Sims were named as defendants in the 595 Case. See Hoglan v. Robinson, No. 7:16-cv-00595 (W.D. Va.).

Just before noon on October 11, 2017, five guards arrived at Hoglan's cell and advised him that "they were there to take anything of his that contained nude or seminude images." Id. ¶¶ 75–76. The guards proceeded to confiscate books, magazines, commercially-distributed photographs of celebrities and models, and vendor catalogs and brochures. Id. ¶ 76. The guards informed Hoglan that Schneider had instructed them to search his cell. Id. ¶ 77. Hoglan later learned that Boyd was present on the day of the search, and he expresses the belief that Boyd "ordered Schneider to initiate the seizure under the color of the Mathena Prohibition." Id.

Hoglan alleges that the search "was markedly different from typical random searches." Id. ¶ 78. Due to the nature of the items seized, "it was apparent to the other prisoners in Hoglan's housing unit that his property was being taken because he was a sex offender." Id. ¶ 79. As a result, "Hoglan faced many disparaging remarks and insults from other prisoners following that cell search." Id.

Six days later, on October 17, 2017, prison officials conducted a quarterly search of each of the cells at Green Rock, including Hoglan's cell. Id. ¶ 84. During the search, guards removed empty commissary packages, excess newspapers, and other trash. Id. ¶ 85. Although "nothing of significance [was] noted" in the search, a different set of guards subsequently arrived at the cell and advised Hoglan that he was being moved to segregation. Id. ¶ 86. The guards collected all of Hoglan's remaining property, including legal work, correspondence materials, and various clippings from periodicals. Id. ¶ 87.

Hoglan was advised that the decision to move him to segregation was based on two items seized during the search conducted on October 11, 2017, which led prison officials to

8

believe that Hoglan was operating a business in violation of VDOC regulations. Id. ¶ 98. After being in segregation for a few days, Hoglan was served with a disciplinary offense report in which Schneider charged him with possession of contraband (hereinafter "Disciplinary Case No. GROC-17-1189"). Id. ¶ 101; see also Disciplinary Offense Report, ECF No. 68-9 at 50.[5] The report indicated that Hoglan's cell had been searched on October 17, 2017, and that "[a]n inventory of his personal property revealed the possession of materials, drawings, and photos that are explicitly prohibited per his most current Individualized Treatment Plan." Disciplinary Offense Report, ECF No. 68-9 at 50. Because Schneider did not write the disciplinary charge until October 20, 2017, three days after the alleged offense date, a hearing officer dismissed the charge as untimely on October 23, 2017. Id. at 51; see also 2d Am. Compl. ¶ 104. The following day, Hoglan was removed from segregation. Compl., ECF No. 1, at 16.

On the morning of November 1, 2017, Hoglan was called to a meeting with Boyd and Schneider. 2d Am. Comp. ¶ 115. After denying Hoglan's request to record the meeting, Boyd advised Hoglan that Schneider had developed an Individualized Rehabilitation Plan ("IRP") for him. Id. ¶ 116. Hoglan refused to read or sign the IRP based on his belief that "anything from [Boyd] was not genuine and was retaliation." Id. Boyd informed Hoglan that he would

---

[5] The defendants submitted copies of the disciplinary offense reports that are specifically referenced in the second amended complaint. In reviewing a motion to dismiss for failure to state a claim, the court may "consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (noting that the court could properly consider a document submitted by the defendant in determining whether to dismiss the complaint for failure to state a claim "because [the document] was integral to and explicitly relied on in the complaint and because the plaintiffs [did] not challenge its authenticity").

be "bound by" the IRP regardless of whether he read it. Id. Hoglan received a copy of the

IRP the following day. Id. ¶ 117. The plan provided, in pertinent part, as follows:

> Mr. Hoglan is prohibited from reviewing or possessing any
> publications, materials, drawings, or photos which may be
> detrimental to his Individualized Rehabilitation Plan (IRP), or
> which may or could promote sexually deviant behaviors per
> Operating Procedure 803.2, item IV., A., 4., "publications that
> contain nudity or sexually explicit acts, including child
> pornography or sexual acts in violation of federal or state law."
> This includes, but is not limited to, viewing and possessing
> materials[,] including drawings, of anyone who appears to be
> under the age of 18, nude or seminude females, females touching
> themselves or each other, or any pornographic materials. This is
> per Operating Procedure 440.1, Section VI., A., 6. and Operating
> Procedure 803.2[,] Section IV., B., which [s]tates "In order to
> maintain security, discipline and good order in DOC facilities and
> to assist with rehabilitation and treatment objectives, reduce
> sexual harassment, and prevent a hostile work environment for
> offenders, staff, and volunteers, offenders are not permitted to
> send, receive, or possess material that emphasizes explicit or
> graphic depictions or descriptions of sexual acts or contains
> nudity as defined in this operating procedure."

Id. The IRP was signed by Boyd and Curly Sellers. Id. ¶ 118.

Approximately two hours after the meeting with Boyd and Schneider, guards searched

Hoglan's cell and seized certain property at the direction of Boyd and Schneider. Id. ¶ 121.

That same day, Hoglan was served with a disciplinary offense report in which Schneider

charged him with possession of contraband (hereinafter "Disciplinary Case No. GROC-2017-

1230"). Id. ¶ 123; see also Disciplinary Offense Report, ECF No. 68-9 at 52. The report

indicated that Schneider and Boyd had been reviewing Hoglan's personal property since

October 17, 2017, and that they had determined that "Hoglan was in possession of material,

pictures and drawings that violate his Individualized Rehabilitation Plan and are in violation

of [VDOC Operating Procedure] 803.2 . . . ." Disciplinary Offense Report, ECF No. 68-9 at

52. Because the disciplinary charge was based on the same evidence that was the subject of Disciplinary Case No. GROC-17-1189, which had been dismissed as untimely, a hearing officer dismissed the charge "per procedure" on November 6, 2017. Id. at 54; see also 2d Am. Compl. ¶ 125.

On November 3, 2017, Hoglan had an appointment to use Green Rock's law library. Id. ¶ 126. When he arrived at his scheduled time, he was denied entry. Id. The library scheduler informed Hoglan that "Defendant Sellers had instructed [the scheduler] to remove Hoglan from the pass list for the time." Id. Hoglan alleges that the decision was based on "[t]he unfounded allegation that [he] had typed sexual content found in his seized personal property" using the library's typewriters. Id. ¶ 129. He "was eventually allowed back into the law library" after he "filed a proper grievance." Id. ¶ 127.

Nearly a year later, on October 12, 2018, Hoglan composed an email to Robert Branam, the owner of Elite Paralegal and Prisoner Services ("EPS"), "a mail order source that offers a number of prisoner-targeted services," including legal research and the sale of commercially-distributed photographs. Id. ¶ 134. Hoglan sent the email as part of an effort to document "further censorship abuses" in the 694 Case and the 595 Case. Id. ¶¶ 132–33, 136. The email requested, among other things, that EPS use funds in Hoglan's account to send photos to another inmate, Andrew Stephens. Id. ¶ 135.

After reviewing Hoglan's email to Branam and the photos that were sent to Stephens in response to the email, Charles Crumpler charged Hoglan with the disciplinary offense of unauthorized use or abuse of the mail or telephone (hereinafter "Disciplinary Case No. GROC-2018-1608"). Id. ¶ 137; see also Disciplinary Offense Report, ECF No. 68-9 at 67. On

November 29, 2018, Hoglan appeared before Hearing Officer Sims for a disciplinary hearing. Disciplinary Offense Report, ECF No. 68-9 at 68. Because Sims had been named as a defendant in the 595 Case, Hoglan argued that she should not preside over the disciplinary hearing. 2d Am. Compl. ¶ 141. In response, Sims claimed to have no knowledge of the lawsuit and therefore declined to recuse. Id. Hoglan notes, however, that Sims's attorney had waived service of process on her behalf on September 6, 2017, more than a year earlier. Id. ¶ 142. Sims ultimately found Hoglan guilty of the charged offense and imposed a reprimand as the penalty for the conviction. Disciplinary Offense Report, ECF No. 68-9 at 68.

Approximately seven months later, on June 21, 2019, "Hoglan was again subjected to another spectacle-inducing seizure of his property." 2d Am. Compl. ¶ 153. Defendant Hayley Shephard, a QMHP who had replaced Schneider, subsequently advised Hoglan that she and other employees had determined that certain items found in his possession violated the IRP that had been implemented on November 1, 2017. Id. ¶¶ 152, 156. Even though some of the items had been returned to Hoglan by Boyd and Schneider, Shephard charged Hoglan with the disciplinary offense of possession of contraband (hereinafter "Disciplinary Case No. GROC-2019-1079"). Id. ¶¶ 157, 160; see also Disciplinary Offense Report, ECF No. 68-9 at 80. Following a disciplinary hearing conducted on July 3, 2019, Hearing Officer Sims found Hoglan guilty of committing the charged offense and imposed a $6.00 fine as the penalty for the conviction. Disciplinary Offense Report, ECF No. 68-9 at 82.

Hoglan appealed the convictions in Disciplinary Case Nos. GROC-2018-1608 and GROC-2019-1079 to Defendants Davis, Elam, and Ponton. 2d Am. Compl. ¶¶ 146, 167. Davis, Elam, and Ponton declined to grant a new hearing on either charge and upheld the

convictions in both disciplinary cases. Id. ¶¶ 189, 192. Hoglan alleges that he "lost his prison jobs multiple times" as a result of the disciplinary convictions. Id. ¶ 172.

Based on the foregoing incidents, Hoglan asserts more than seventeen claims for relief in the second amended complaint. In Counts One and Eight, and as part of Count Fifteen, Hoglan asserts due process claims related to the imposition and enforcement of the Mathena Prohibition and the IRP. Id. ¶¶ 176, 183, 190. In Counts Two, Four, Five, Six, Seven, Ten, and Eleven, and as part of Counts Thirteen and Sixteen, Hoglan asserts claims of retaliation in violation of the First Amendment. Id. ¶¶ 177, 179–82, 185–86, 188, 191. In Counts Three and Nine, Hoglan claims that the seizure or restriction of certain items pursuant to the Mathena Prohibition and the IRP violated his rights under the First Amendment. Id. ¶¶ 178, 184. In Counts Twelve through Seventeen, Hoglan claims that he was denied due process in connection with Disciplinary Case Nos. GROC-2018-1608 and GROC-2019-1079. Id. at ¶¶ 187–92.

## Legal Standards

The defendants have filed a motion for summary judgment under Rule 56. Pursuant to this rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that if the nonmovant demonstrates that he cannot present facts essential to justify his opposition, the court may defer considering the motion, deny it, or allow time for the nonmovant to take discovery or obtain affidavits or declarations. Fed. R. Civ. P. 56(d).

In their motion for summary judgment, the defendants move to dismiss certain counts and defendants for failure to state a claim upon which relief can be granted. Although the defense of failure to state a claim is typically raised in a Rule 12(b)(6) motion, it may also be asserted in a motion for summary judgment. See Martin v. Southwestern Va. Gas Co., 135 F.3d 307, 309 n.1 (4th Cir. 1998) (citing Daingerfield Island Protective Soc'y v. Lujan, 797 F. Supp. 25, 29 (D.D.C. 1992)); see also Fed. R. Civ. P. 12(h) (providing that the defense of failure to state a claim can be raised at trial).

To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557). Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

<u>Discussion</u>

**I.      Dismissal for Failure to State a Claim**

As indicated above, the defendants' motion for summary judgment seeks dismissal of certain counts and defendants for failure to state a claim under § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983[,] a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" <u>Loftus v. Bobzien</u>, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting <u>Crosby v. City of Gastonia</u>, 635 F.3d 634, 639 (4th Cir. 2011)). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." <u>Wilcox v. Brown</u>, 877 F.3d 161, 170 (4th Cir. 2017); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution.").

**A.      Due Process Claims**

**1.      Counts One, Eight, and Fifteen**

In Count One, Hoglan claims that Mathena, Robinson, Wade, Bateman, Perry, Booker, and Davis violated his right to due process by imposing and enforcing the Mathena Prohibition. 2d Am. Compl. ¶ 176. More specifically, Hoglan asserts that the defendants "failed to provide . . . 'fair warning' and an 'ascertainable standard' for those charged with enforcing the [Mathena Prohibition]" and that the prohibition was "overbroad" and "enforced

15

in an arbitrary, subjective, and prejudiced manner." Id. Similarly, in Count Eight, Hoglan claims that Mathena, Robinson, Sellers, Davis, Schneider, and Boyd violated his right to due process by imposing and enforcing the IRP. Id. ¶ 183. Hoglan asserts that the defendants "failed to provide . . . 'fair warning' and an 'ascertainable standard' for those charged with enforcing the IRP" and that the IRP was "overbroad" and "enforced in an arbitrary, subjective, and prejudiced manner." Id. Likewise, as part of Count Fifteen, Hoglan claims that Shephard violated his right to due process by enforcing the IRP without providing fair warning of what it proscribed. Id. ¶ 190.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Due process contains both procedural and substantive components." Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 145 (4th Cir. 2014). "Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." Id. (citations omitted). The defendants have construed Counts One and Eight as asserting violations of both substantive and procedural due process. The court will address each component in turn.

### a.      Substantive Due Process

To the extent Hoglan asserts substantive due process claims stemming from the imposition and enforcement of the Mathena Prohibition and the IRP, the defendants argue that such claims are duplicative of the First Amendment claims asserted in Counts Three and Nine. See Defs.' Br. Supp. M. Summ. J., ECF No. 68, at 26 ("Any substantive due process claim regarding the plans should be—and has been—brought as a First Amendment claim.").

Based on Hoglan's particular allegations, the court agrees. According to the second amended complaint, the Mathena Prohibition and the IRP prohibited Hoglan from possessing materials that enjoy First Amendment protection. See, e.g., United States v. Van Donk, 961 F.3d 314, 326 (4th Cir. 2020) (noting that the Supreme Court has indicated that "while obscenity and child pornography aren't protected by the First Amendment, sexually explicit materials that have 'social value' are") (citing United States v. Williams, 553 U.S. 285, 288 (2008)). In Counts Three and Nine, Hoglan claims that the defendants violated the First Amendment by prohibiting him from possessing "First Amendment protected materials" under the Mathena Prohibition and the IRP. 2d Am. Comp. ¶¶ 178, 184. Likewise, in response to the defendants' motion, Hoglan argues that the imposition of the Mathena Prohibition and the IRP implicated a liberty interest protected by the Due Process Clause because the restrictions prevented him from viewing and possessing "First Amendment protected items." Pl.'s Mem. Opp'n, ECF No. 96, at 42. Additionally, in claiming that the Mathena Prohibition and the IRP were unconstitutionally overbroad, Hoglan is asserting a "a form of First Amendment challenge." Farrell v. Burke, 449 F.3d 470, 498 (2d Cir. 2006); see also Williams, 553 U.S. at 292 (explaining that the overbreadth doctrine is a "First Amendment . . . doctrine").

The Supreme Court has made clear that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Because the First Amendment provides an explicit source of protection for the right that the defendants are alleged to have

17

violated in Counts One and Eight, the substantive due process claims will be dismissed as duplicative of the First Amendment claims asserted in Counts Three and Nine.[6] See Handy-Claim v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (dismissing claim for violation of substance due process right to free speech as duplicative of a First Amendment claim); Wilson v. Birnberg, 667 F.3d 591, 599 (5th Cir. 2012) (disregarding a plaintiff's substantive due process claims because they were "rooted in procedural due process, the Equal Protection Clause, and the First Amendment"); Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005) (holding that the plaintiff's substantive due process claim was "subsumed" by alleged First Amendment and equal protection violations).

### b.   Procedural Due Process

To the extent Counts One and Eight raise a procedural due process challenge, the defendants argue that "Hoglan has no protected property interest in contraband" and that "the deprivation of any property can be adequately addressed in state court." Defs.' Br. Supp. Mot. Summ. J. at 27. In response, Hoglan emphasizes that the defendants have misconstrued his due process claims and that he has instead alleged that "the defendants failed to provide constitutionally congruent due process in enacting the [Mathena Prohibition] and the IRP" because they, among other alleged deficiencies, "failed to give him 'fair warning' about what specific conduct or content was impermissible" and "failed to create an ascertainable standard for those charged with [enforcement]." Pl.'s Mem. Opp'n at 36. In other words, Hoglan has

---

[6] The defendants have only moved to dismiss Counts Three and Nine with respect to certain defendants. The defendants otherwise concede that Counts Three and Nine state plausible violations of the First Amendment. The defendants are advised that any renewed motion for summary judgment should address Hoglan's overbreadth challenge under the First Amendment.

asserted in Counts One and Eight that the Mathena Prohibition and the IRP were unduly vague.

Unlike the overbreadth doctrine, "[t]he vagueness doctrine is a component of the right to due process." Farrell, 449 F.3d at 485; see also United States v. Morrison, 844 F.2d 1057, at 1070 & n. 19 (4th Cir. 1988) (noting that "vagueness and overbreadth . . . are separate and distinct doctrines" and that a "vagueness challenge rests ultimately on the procedural due process requirement of adequate notice, though it is a challenge with special bite in the First Amendment area") (citations omitted). A condition or restriction is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." Farrell, 449 F.3d at 485 (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)); see also Reynolds v. Quiros, ___ F. 4th ___, 2022 U.S. App. LEXIS 3080, at *48–60 (2d Cir. Feb. 3, 2022) (addressing inmates' vagueness challenges to a prison directive that limited access to sexually explicit materials); Fauconier v. Clarke, 257 F. Supp. 3d 746, 759–60 (W.D. Va. 2017), aff'd, 709 F. App'x 174 (4th Cir. 2018) (addressing an inmate's vagueness challenges to VDOC Operating Procedure 803.2).

In this case, the defendants have not addressed the vagueness challenges that Hoglan clearly intended to raise in Counts One and Eight, and the court will not address them sua sponte. Accordingly, the procedural due process claims asserted in both counts remain pending. Additionally, to the extent Count Fifteen seeks to hold Shephard responsible for enforcing the IRP without providing fair warning of what was prohibited, that portion of Count Fifteen will be allowed to proceed at this stage of the proceedings.

### 2.      Counts Twelve through Seventeen

In Counts Twelve through Seventeen, Hoglan claims that he was denied due process in connection with Disciplinary Case Nos. GROC-2018-1608 and GROC-2019-1079. In particular, Hoglan alleges that Defendant Crumpler failed to adequately warn him that he was prohibited from ordering photos from a third party for another inmate and failed to advise him what the penalty for such action would be (Count Twelve). 2d Am. Compl. ¶ 187. Hoglan alleges that Hearing Officer Sims was incapable of acting as an impartial factfinder since she was named as a defendant in the 595 Case (Counts Thirteen and Sixteen). Id. ¶¶ 188, 191. Hoglan further alleges that Defendant Shephard "unlawfully conjured" the charge in Disciplinary Case No. GROC-2019-1079 (part of Count Fifteen), and that Defendants Davis, Elam, and Ponton "violated Hoglan's due process [rights by failing to] give him a new hearing" on either charge (Counts Fourteen and Seventeen). Id. ¶¶ 189–90, 192.

In Wolff v. McDonnell, 418 U.S. 539 (1974), "the Supreme Court recognized that constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests—such as the loss of good time credits . . . ." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (citing Wolff, 418 U.S. at 555). The Supreme Court held that an inmate charged with a disciplinary violation implicating a protected liberty interest must receive: (1) advance written notice of the charges against him; (2) an opportunity to call witnesses and present evidence unless doing so would present an undue hazard; (3) a written statement describing the evidence relied on and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. Wolff, 418 U.S. at 563-71. The procedural protections outlined in Wolff apply only when the disciplinary sanction implicates

a protected constitutional interest. <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995); <u>see also</u> <u>Wolff</u>, 418 U.S. at 571 n.19 ("We do not suggest . . . that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."). A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless it inflicts "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence." <u>Sandin</u>, 515 U.S. at 484, 487; <u>see also</u> <u>Canady v. Davis</u>, 687 F. App'x 362, 365 (5th Cir. 2017) ("An inmate is entitled to prior notice, or fair warning, of proscribed conduct before a severe [disciplinary] sanction, such as deprivation of good-time credits, may be imposed.") (internal citations and quotation marks omitted); <u>Landor v.</u> <u>Lamartiniere</u>, 515 F. App'x 257, 259 (5th Cir. 2013) ("To the extent Landor is arguing that defendants violated his right to due process by filing false disciplinary charges against him, he has not demonstrated that the punishments he received . . . 'impose [] atypical and significant hardship[s] . . . in relation to ordinary incidents of prison life.' Thus, he has failed to show that these punishments implicated a liberty interest that required due process.") (quoting <u>Sandin</u>, 515 U.S. at 484); <u>McNeill v. Currie</u>, 84 F. App'x 276, 277 (4th Cir. 2003) ("We conclude that McNeill was not entitled to due process protections with respect to his disciplinary hearings . . . , because the disciplinary actions . . . did not create an atypical or significant hardship in relation to the ordinary incidents of prison life.").

According to the disciplinary reports referenced in the second amended complaint, Hoglan received a reprimand for the disciplinary charge for which he was convicted in Disciplinary Case No. GROC-2018-1608, and he was penalized with a $6.00 fine in

Disciplinary Case No. GROC-2019-1079. The court agrees with the defendants that neither disciplinary action implicates the protections afforded under the Due Process Clause. See Justice v. Lowe, No. 7:20-cv-00294, 2021 U.S. Dist. LEXIS 147902, at *5 (W.D. Va. Aug. 6, 2021) ("Courts have consistently held that a reprimand does not rise to the level of an atypical or significant hardship that would warrant due process protections.") (internal quotation marks omitted) (collecting cases); Graham v. Stallard, No. 7:17-cv-00035, 2020 U.S. Dist. LEXIS 177366, at *53 (W.D. Va. Sept. 28, 2020) ("The $10 monetary fines imposed here were insufficient to trigger constitutional due process protections.") (collecting cases). Accordingly, to the extent Counts Twelve through Seventeen raise procedural due process challenges related to the disciplinary charges or penalties in Disciplinary Case Nos. GROC-2018-1608 and GROC-2019-1079, the counts are subject to dismissal for failure to state a claim.[7]

In response to the defendants' motion, Hoglan argues that he has specifically alleged that the charges in Disciplinary Case Nos. GROC-2018-1608 and GROC-2019-1079 "were conjured as retaliation for his redress of both institutional and legal grievances." Pl.'s Mem. Opp'n at 50; see also 2d Am. Compl. ¶¶ 186, 188, 191 (alleging that Crumpler and Sims subjected him to disciplinary actions in retaliation for "filing challenges against unlawful censorship"). Hoglan further argues that "a prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his redress of grievances," Pl.'s

---

[7] Hoglan alleges that he "lost prison jobs multiple times" as a result of the disciplinary convictions. 2d Am. Compl. ¶ 172. To the extent he relies on the loss of employment to support the disciplinary-related due process claims, the claims fare no better. It is well-settled that "due process violations are [not] triggered by the loss of a prison job." Ayers v. Campbell, 267 F. App'x 176, 177 (3d Cir. 2008); see also Farmer v. Phillips, No. 20-5730, 2021 U.S. App. LEXIS 31448, at *13 (6th Cir. Oct. 19, 2021) ("Assuming that Farmer lost his prison job . . . for disciplinary reasons, as he appears to allege, the claim fails to state a claim for relief because a prisoner does not have a constitutional right to prison employment or a particular prison job.") (internal quotation marks and citations omitted).

Mem. Opp'n at 50 (citing Jones v. Coughlin, 45 F.3d 677, 679–80 (2d Cir. 1995)), and that the Fourth Circuit has held that "retaliation against an inmate for his filing of institutional and legal grievances violated the First Amendment (a liberty interest)," id. (citing Booker v. S.C. Dep't of Corr., 855 F.3d 533, 543–44 (4th Cir. 2017)). As indicated above, however, the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). Hoglan correctly notes that the Fourth Circuit has recognized that inmates have a First Amendment right to file grievances and lawsuits against prison officials and that they are entitled to be free from retaliation for the exercise of that right. Because the First Amendment provides an explicit source of protection, Hoglan has no separate "substantive due process" claim for alleged retaliation. For these reasons, the disciplinary-related due process claims asserted in Counts Twelve through Seventeen will be dismissed in their entirety.[8]

### B.     First Amendment Retaliation Claims

In Counts Two, Four, Five, Six, Seven, Ten, and Eleven, and as part of Counts Thirteen and Sixteen, Hoglan claims that various defendants violated the First Amendment by retaliating against him for filing challenges against unlawful censorship. The retaliatory actions purportedly included instituting the Mathena Prohibition (Count Two), ordering cell searches and seizures of property (Count Four), filing bogus or false disciplinary charges (Counts Five

---

[8] As indicated above, Count 15 will be allowed to proceed to the extent that it seeks to hold Shephard responsible for enforcing restrictions in the IRP that he claims were unconstitutionally vague.

and Eleven), moving Hoglan to segregation (Count Six), instituting the IRP (Count Seven), barring Hoglan from using the law library (Count Ten), and "act[ing] as a prosecutor" at the disciplinary hearings (Counts Thirteen and Sixteen). 2d Am. Compl. ¶¶ 177, 179–182, 185, 186, 188, 191. Hoglan expresses the "belie[f] that had he not filed grievances and lawsuits challenging the censorship policies, practices, and actions of the VDOC and its employees that the Mathena Prohibition, the IRP, all the targeted searches, seizures, his placement into segregation, the institutional infraction charges, the ban from the law library, and impingement on what materials he may view or possess would not have occurred." Id. ¶ 175.

Although retaliation is not specifically referenced in the Constitution, it "is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Am. Civil Liberties Union v. Wicomico Cnty., 999 F.2d 780, 75 (4th Cir. 1993). As relevant here, prison officials may not retaliate against an inmate for exercising his First Amendment right of access to the courts, Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978), nor may they take actions that violate the First Amendment "right to file a prison grievance free from retaliation," Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017).

On other hand, courts treat an inmate's claims of retaliation "with skepticism because 'every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). In order to state a colorable retaliation claim under § 1983, an inmate must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely

affected his First Amendment rights; and (3) that there was a causal relationship between the inmate's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

Here, the defendants acknowledge that Hoglan has sufficiently alleged that he engaged in activity protected by the First Amendment by filing grievances and lawsuits. The defendants instead challenge whether Hoglan's allegations are sufficient to satisfy the second and third elements of a First Amendment retaliation claim.

### 1.    Mathena Prohibition and IRP (Counts Two and Seven)

In Count Two, Hoglan claims that Mathena, Robinson, Wade, Bateman, Perry, Booker, and Davis implemented and enforced the Mathena Prohibition in retaliation for exercising his First Amendment rights. 2d Am. Compl. ¶ 177. Similarly, in Count Seven, Hoglan claims that Mathena, Robinson, Sellers, Davis, Schneider, and Boyd implemented and enforced the IRP in retaliation for exercising his First Amendment rights. Id. ¶ 187.

In moving to dismiss these claims, the defendants first argue that Hoglan has not plausibly shown that the Mathena Prohibition or the IRP adversely affected his First Amendment rights and that the dockets in the lawsuits filed by Hoglan demonstrate that he continued to pursue his legal challenges after the restrictions were implemented. For purposes of the second element of a retaliation claim, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rector & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citation omitted). "This objective inquiry examines the specific facts of each case, taking into account the actors

involved and their relationship." <u>Booker v. S.C. Dep't of Corr.</u>, 583 F. App'x 43, 44 (4th Cir. 2014). Although "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity," <u>Constantine</u>, 411 F.3d at 500, it "is <u>not dispositive</u> of the question of whether such action would likely deter a person of ordinary firmness," <u>Martin</u>, 858 F.3d at 249 (emphasis added). Courts have explained that "this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed . . . ." <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th Cir. 1999); <u>see also</u> <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that while the "effect of the alleged conduct . . . need not be great in order to be actionable, . . . it must be more than <u>de minimis</u>") (internal quotation marks and citations omitted).

In this case, Hoglan alleges that he was "not under any treatment prohibition" for nearly three years prior to the implementation of the Mathena Prohibition; that the Mathena Prohibition and the IRP restricted his ability to possess materials protected by the First Amendment; and that the restrictions had the effect of making such materials contraband, the possession of which is a punishable disciplinary offense. At this stage of the proceedings, the court is unable to conclude as a matter of law that the effects of the Mathena Prohibition and the IRP were so inconsequential that they would not have deterred a person of ordinary firmness from exercising his First Amendment rights.[9] <u>Compare</u> <u>Crosby v. Heil</u>, 499 F. App'x

---

[9] The court recognizes that in response to the First Amendment claims asserted in Counts Three and Nine, the defendants argue that the restrictions were "based on a legitimate penological objective" and "constitutionally permissible." Defs.' Br. Supp. Summ. J. at 33. Because they rely on affidavits to support these particular arguments, however, the defendants acknowledge that they cannot be resolved under Rule 12(b)(6).

764, 767 (10th Cir. 2012) (holding that an inmate failed to demonstrate that a negative evaluation in a sex offender treatment program would deter a person of ordinary firmness from filing administrative complaints since he "identif[ied] no negative consequences flowing from this evaluation"), with Wolfe v. Alexander, No. 3:11-cv-00751, 2016 U.S. Dist. LEXIS 49736, at *30 (M.D. Tenn. Apr. 13, 2016) (accepting, for purposes of a motion for summary judgment, that "the implementation and maintenance of the No Commissary Policy itself qualified as an adverse action of the type that would deter a person of ordinary firmness from continuing to engage in protected conduct, in part because implementation of the policy . . . had the effect of making commissary 'contraband,' possession of which was punishable by placement in punitive segregation").

The defendants also argue, with respect to Count Seven, that Hoglan's allegations are insufficient to satisfy the causation element because Hoglan "alleges little more than a six-month temporal connection between the exercise of a constitutional right and the implementation of the IRP." Defs.' Br. Supp. Summ. J. at 47. Having reviewed Hoglan's allegations, the court agrees.

Hoglan appears to rely on the temporal proximity between certain defendants returning waivers of service in the 595 Case in April 2017 and the implementation of the IRP in November 2017. See 2d Am. Compl. at 16–26; see also Pl.'s Mem. Opp'n at 18 (emphasizing that the IRP was imposed "after his filing of two more censorship lawsuits and their tethered grievances"). However, "[t]he cases that accept mere temporal proximity between [a defendant's] knowledge of protected activity and an adverse . . . action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal

27

proximity must be very close[.]" <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (internal quotation marks and citations omitted). Although there is not a "bright temporal line," case law from the Fourth Circuit indicates that a six-month lapse between a defendant becoming aware of protected activity and an alleged adverse action is too long to establish causation by temporal proximity alone. <u>See</u> <u>Wilcox v. Lyons</u>, No. 7:17-cv-000530, 2018 U.S. Dist. LEXIS 70147, at *7 (W.D. Va. Apr. 25, 2018) (collecting case law and rejecting the plaintiff's argument that a two-and-a-half-month time lapse was sufficient to establish a causal link and state a claim of retaliation). Indeed, the Fourth Circuit has specifically held that "[a] six month lag is sufficient to <u>negate</u> any inference of causation." <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 278 (4th Cir. 2001) (emphasis added). Moreover, Hoglan does not allege that anything occurred between April 2017 and November 2017 that would suggest that the IRP was causally connected to earlier lawsuits or grievances.[10] And "simply alleg[ing] retaliation" is insufficient to establish a causal connection. <u>Thaddeus-X</u>, 175 F.3d at 399; <u>see also</u> <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation. Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."). Accordingly, the court concludes that Count Seven must be dismissed for failure to state a claim.

---

[10] While Hoglan may have continued litigating pending lawsuits during that time, the Fourth Circuit has held, for purposes of a retaliation claim, that a plaintiff's protected activity is the "filing of his lawsuit" rather than "his continuing pursuit of the lawsuit." <u>Pepper v. Precision Valve Corp.</u>, 526 F. App'x 335, 337 (4th Cir. 2013); <u>see also</u> <u>Spies v. Voinovich</u>, 48 F. App'x 520, 525 (6th Cir. 2002) (noting that an inmate "cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or lawsuit and then claiming that everything that happens to him is retaliatory"); <u>Thompson v. Clarke</u>, No. 7:17-cv-00010, 2020 U.S. Dist. LEXIS 39339, at *10 (W.D. Va. Mar. 6, 2020) (rejecting the plaintiff's argument that the causal-connection requirement had been met because the allegedly adverse treatment occurred while he was litigating active cases).

## 2.      Cell Searches and Segregation (Counts Four and Six)

For similar reasons, the court concludes that Counts Four and Six are subject to dismissal. In Count Four, Hoglan claims that Schneider and Boyd ordered cell searches and seizures of personal property in retaliation for filing challenges against unlawful censorship. 2d Am. Compl. ¶ 179. In Count Six, Hoglan claims that Defendant John Doe, an unidentified investigator, placed him in segregation in October 2017 in retaliation for challenging unlawful censorship. Id. ¶ 181.

As with Count Seven, however, Hoglan does not plausibly allege that these challenged actions were causally connected to lawsuits or grievances filed by Hoglan. Schneider and Boyd were not named as defendants in either of the previous lawsuits on which Hoglan relies. And even if these defendants became aware of the 595 Case in April 2017, as suggested in the second amended complaint,[11] "[k]nowledge alone . . . does not establish a causal connection" between the protected activity and the adverse action. Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004). Additionally, the temporal proximity between the filing by the defendants in the 595 Case and the retaliatory actions alleged in Counts Four and Six is "simply too slender a reed on which to rest" a claim of retaliation. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993); see also Gilliam v. Bertie Ct. Bd. of Educ., 2021 U.S. Dist. LEXIS 18801, at *29-30 (E.D.N.C. Sept. 30, 2021) (holding, based on existing Supreme Court and Fourth Circuit case law, that a five-month lapse between the alleged protected activity and an adverse action was

---

[11] Hoglan appears to suggest that "the Defendants" in this action collectively acknowledged that they were aware that he had filed another federal lawsuit when the defendants in the 595 Case returned waivers of service in that case in April 2017. 2d Am. Compl. ¶ 74. However, Hoglan offers no explanation, much less a plausible explanation, for this assertion.

"a span too great from which to infer causation"). Accordingly, Courts Four and Six are subject to dismissal for failure to state a claim.[12]

### 3.    Disciplinary Charges (Counts Five and Eleven)

In Count Five, Hoglan claims that Schneider, Boyd, and Davis "conjured/enforced bogus contraband charges" in retaliation for exercising his First Amendment right to file lawsuits and/or grievances. 2d Am. Compl. ¶ 180. Similarly, in Count Eleven, Hoglan claims that Crumpler "conjured the false institutional disciplinary charge, GROC-2-18-1608, against Hoglan" in retaliation for exercising his First Amendment right to challenge unlawful censorship. Id. ¶ 186. Hoglan notes that Crumpler was named as a defendant in the 595 Case and that he was "the subject of numerous grievances written by Hoglan." Id. ¶ 137. However, Hoglan does not allege that any grievances were filed in close proximity to the disciplinary charge pursued by Crumpler.

Once again, Hoglan appears to rely on the defendants' knowledge of prior lawsuits or grievances to state a claim for retaliation. However, "mere knowledge of the plaintiff's protected activity prior to an adverse . . . action does not establish a retaliatory motive." Sanchez v. Henderson, 188 F.3d 740, 747 (7th Cir. 1999); see also Price, 380 F.3d at 213. In the absence of any other allegations that would allow the court to reasonably infer that the

---

[12] In response to the defendants' motion, Hoglan suggests that his placement in segregation could support additional claims that were not included in the second amended complaint. See Pl.'s Mem. Opp'n at 26 (asserting that he may be able to establish a "conditions of confinement claim under the Eighth Amendment, and additionally a due process claim under the Fourteenth Amendment because he was not afforded a hearing [prior to be moved to segregation]"). "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). The rule is no different for pro se plaintiffs. See Chaney v. United States, 658 F. App'x 984, 988 (11th Cir. 2016) (emphasizing that a pro se litigant "must follow procedure rules" and therefore "cannot raise new claims in his brief opposing summary judgment"). Accordingly, the court declines to consider any new claims presented for the first time in Hoglan's opposition brief.

disciplinary charges were pursued in retaliation for filing lawsuits or grievances, the court concludes that Counts Five and Eleven must be dismissed. See, e.g., Farmer v. Phillips, No. 20-5730, 2021 U.S. App. LEXIS 31448, at *7 (6th Cir. Oct. 19, 2021) ("Because Farmer did not plead any facts linking the allegedly false disciplinary charge with his grievances, his retaliation claims were properly dismissed for lack of a causal connection.").

### 4.     Temporary Library Suspension

In Count Ten, Hoglan claims that Sellers, Davis, Schneider, and Boyd temporarily restricted him from physically accessing the law library in November 2017 in retaliation for challenging unlawful censorship by the defendants and other VDOC employees. 2d Am. Compl. ¶ 185. Hoglan alleges that he needed to use the library to prepare legal work for the 694 Case and the 595 Case. Id. ¶ 126. After Hoglan filed a grievance complaining about the suspension, he was allowed to use the library again. Id. ¶ 127.

The court agrees with the defendants that Hoglan's allegations regarding the temporary library suspension appear to describe the type of minor inconvenience that does not support a claim of retaliation. See Meeks v. Schofield, 625 F. App'x 697, 702 (6th Cir. 2015) (affirming the district court's decision that "searches of [the plaintiff's] work station [and] the denial of access to the library on one occasion were de minimis conduct that did not constitute adverse action"); Garner v. Moore, No. 2:13-cv-00383, 2014 U.S. Dist. LEXIS 115372, at * 7 (S.D. Tex. Aug. 19, 2014) (holding that "the acts complained of—limited talking privileges, verbal reprimands, temporary suspension of library privileges, and delays in supply delivery—are de minimis"); Polansky v. Wrenn, No. 12-cv-105, 2012 U.S. Dist. LEXIS 166331, at *6 (D.N.H. Oct. 16, 2012) (noting that occasional denials of access to the law library are "normal incidents

of prison life," which "are insufficient to deter an inmate of ordinary firmness from filing a lawsuit"). However, even if a temporary library suspension would deter a person of ordinary firmness from exercising First Amendment rights, Hoglan does not allege any facts that would allow the court to reasonably infer that the suspension was causally connected to the filing of lawsuits or grievances. Accordingly, the retaliation claim asserted in Count Ten will be dismissed for failure to state a claim.

### 5.       Disciplinary Hearings

Finally, as part of Counts Thirteen and Sixteen, Hoglan claims that Hearing Officer Sims acted as a "prosecutor" during the disciplinary hearings in retaliation for challenging unlawful censorship. 2d Am. Compl. ¶¶ 188, 191. Hoglan contends that Sims "could not act as impartial fact finder" since "she was a named defendant in [the 595 Case] involving VDOC employees and unconstitutional censorship against commercially distributed photos." Id.

The court concludes that Hoglan's allegations are insufficient to state a claim for retaliation against Hearing Officer Sims for at least three reasons. First, courts have routinely held that a hearing officer does not lack the necessary impartiality to preside over a disciplinary hearing merely because the officer was named in a lawsuit brought by the inmate. See Speight v. Minor, 245 F. App'x 213, 217 (3d Cir. 2007) ("If a prisoner could disqualify hearing officers through instituting lawsuits against them, a prison's ability to conduct disciplinary hearings would be seriously compromised."); Brown v. Rios, 196 F. App'x 681, 684 (10th Cir. 2006) ("Standing alone, the allegation that the [disciplinary hearing officer] was biased solely as a result of his being named in a defendant in a civil suit by Brown does not rise to a due process violation."); Burks-Bey v. Vannatta, 130 F. App'x 46, 48 (7th Cir. 2005) ("[B]ecause Burks-

32

Bey has never identified a basis for disqualification other than McCoy's status as a defendant in his lawsuit, the district court was correct to reject this claim."). Accordingly, the mere fact that Sims presided over two disciplinary hearings—despite having been sued by Hoglan—does not constitute the type of adverse action that supports a claim of retaliation. See Owlfeather-Gorbey v. Warden, No. 1:19-cv-02394, 2020 U.S. Dist. LEXIS 48660, at *21 (D. Md. Mar. 20, 2020) (dismissing similar retaliation claims and noting that if the court were to allow the claims to proceed, "it would mean indorsing [the plaintiff's] view that any [prison] staff member against whom he has filed a complaint would necessarily be excluded from performing their job functions as they relate to [the plaintiff's] confinement").

Second, the first disciplinary hearing over which Sims presided—during which Hoglan asked her to recuse as a result of being named as a defendant in the 595 Case—resulted only in a reprimand by Sims. A disciplinary penalty does not qualify as a retaliatory adverse action unless it is severe enough to deter a person of ordinary firmness from exercising First Amendment rights. Gallo v. Stokes, 683 F. App'x 525, 527 (7th Cir. 2017). A mere reprimand "does not satisfy this threshold." Id.; see also Gaither v. Smith, No. 96-6406, 1997 U.S. App. LEXIS 1255, at *1 (4th Cir. Jan. 27, 1997) (holding that an inmate's allegations that a defendant "reprimanded him and threatened him with future lock-up in retaliation for exercising his First Amendment right to file grievances [were] legally insufficient to meet the necessary 'adverse impact' requirement"); Pegues v. Orrill, 3:13-cv-03200, 2013 U.S. Dist. LEXIS 116928, at *7 (C.D. Ill. Mar. 5, 2015) (holding that a verbal reprimand is "not adverse enough to support a retaliation claim"); Savage v. Brown, No. 6:10-cv-00483, 2011 U.S. Dist. LEXIS 8375, at *15

(E.D. Tex. Jan. 27, 2011) (concluding that "punishment consistent of nothing more than a verbal reprimand cannot be viewed as an actionable retaliatory act").

Finally, to the extent Hoglan contends that the waiver of service filed on behalf of Sims in the 595 Case establishes that she was aware of the lawsuit against her, Hoglan acknowledges that the waiver "was returned executed by Sims on September 6, 2017," 2d Am. Compl. ¶ 142, more than a year before the hearing in Disciplinary Case No. GROC-2018-1608, and more than eighteen months before the hearing in Disciplinary Case No. GROC-2019-1079. Such a lengthy lapse in time between Sims becoming aware of the pending lawsuit against her and the imposition of a disciplinary penalty is "sufficient to negate any inference of causation." Hooven-Lewis, 249 F.3d at 278; see also Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (finding a lapse of three to four months to be "too long to establish a causal connection by temporal proximity alone").

For all of these reasons, the court will dismiss the claims of retaliation asserted against Sims in Counts Thirteen and Sixteen.

### B.    Personal Involvement

In addition to arguing that certain counts are subject to dismissal for failure to state a claim, the defendants argue that Hoglan's second amended complaint fails to adequately allege that Perry, Booker, Wade, Sellers, and Bateman were personally involved in the alleged violations of his constitutional rights. The court will address each of these defendants in turn.

### 1.    Defendant Perry

Defendant Perry served as Hoglan's "assigned case manager/counselor" during the time period at issue. 2d Am. Compl. ¶ 48. She is mentioned only once in Hoglan's summary

of the facts. Hoglan alleges that he spoke to Perry following the imposition of the Mathena Prohibition and that Perry said that "she was aware of the order for the treatment plan prohibition," but that "she did initiate it" or "want to become involved." <u>Id.</u> Perry recommended that Hoglan contact the Warden to discuss the matter. <u>Id.</u>

The court agrees with the defendants that Hoglan's allegations pertaining to Perry are insufficient to establish that Perry was personally involved in the alleged denial of due process described in Count One or the First Amendment violations alleged in Counts Two and Three. Hoglan does not allege that Perry was involved in implementing or enforcing the Mathena Prohibition, or that she played any role in limiting the materials that Hoglan was permitted to possess. At most, Hoglan's allegations indicate that Perry was aware of the Mathena Prohibition and Hoglan's belief that the restrictions were unlawful. "Importantly[, however,] mere knowledge of [an alleged constitutional] deprivation does not suffice" to establish personal liability under § 1983. <u>Williamson v. Stirling</u>, 912 F.3d 154, 171 (4th Cir. 2018). Accordingly, Counts One, Two, and Three will be dismissed as to Perry.

## 2.    Defendant Booker

Defendant Booker served as the Warden of Green Rock during the time period at issue. 2d Am. Compl. ¶¶ 7, 52. Hoglan spoke to Booker following the imposition of the Mathena Prohibition. <u>Id.</u> ¶ 53. Hoglan alleges that Booker advised him that "Defendant Mathena had ordered the prohibition through an email" and that Booker was unable to explain the prohibition when Hoglan asked him to do so. <u>Id.</u> When Hoglan subsequently "explained that his rights and VDOC procedures were being violated," Booker "said that he was just

following orders" and that "his position was to allow Hoglan and [VDOC officials in Richmond] to fight it out." Id. (internal quotation marks omitted).

The court agrees with the defendants that Hoglan's allegations are insufficient to support a claim of retaliation against Booker. In short, Hoglan does not plausibly allege that Booker personally retaliated against him for filing grievances or lawsuits. See Iqbal, 556 U.S. at 676 (emphasizing that "plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution"). Thus, the retaliation claim asserted in Count Two will be dismissed as to Booker.

On the other hand, the allegations plausibly suggest that Booker was one of the prison officials responsible for enforcing the Mathena Prohibition after it was ordered. Consequently, the remaining due process claim asserted in Count One and the First Amendment claims asserted in Count Three will be allowed to proceed against Booker at this time. See, e.g., Farrell, 449 F.3d at 484 (holding, in a case involving vagueness and overbreadth challenges, that the named defendants' actual enforcement of a special condition that prohibited the possession of pornographic material "would clearly constitute personal involvement" in the alleged violations of the plaintiff's constitutional rights).

### 3.   Defendant Wade

Defendant Wade worked as a case manager or counselor during the time period at issue. 2d Am. Compl. ¶ 9. Hoglan alleges that after the Mathena Prohibition was ordered, Wade "tried bullying Hoglan into signing off on [the] prohibition" and that she advised him that it "wasn't optional" and that "he didn't have any say in the matter." Id. ¶¶ 46–50. Prior to this discussion, Hoglan "had never had any prior interaction with Wade." Id. ¶ 48.

36

The court agrees with the defendants that Hoglan's allegations are insufficient to support a claim of retaliation against Wade. Although Hoglan notes that their discussion occurred "just ten days after Defendant Robinson [and other prison officials] filed their Answer [in the 694 Case]," id. ¶ 46, Hoglan does not allege—much less plausibly demonstrate—that Wade or any other counselor was aware of the 694 Case or any other lawsuit filed by Hoglan. Consequently, the retaliation claim asserted in Count Two will be dismissed as to Wade.

On other hand, as with Defendant Booker, Hoglan's allegations plausibly suggest that Wade played a role in enforcing the Mathena Prohibition after it was ordered. Consequently, the remaining claims against Booker (the procedural due process claim asserted in Count One and the First Amendment violations asserted in Count Three) will be allowed to proceed against Wade at this time.

### 4.      Defendant Sellers

Defendant Sellers served as Green Rock's Institutional Programs Manager during the time period in question. Id. ¶ 14. She was one of several prison officials who signed Hoglan's IRP on November 1, 2017. Id. ¶ 118. In light of the rulings set forth above, the procedural due process claim asserted in Count Eight and the First Amendment violations asserted in Count Nine are the only claims that remain against Sellers. Because the allegations plausibly suggest that Sellers played a role in implementing and enforcing the IRP, these claims will be allowed to proceed against Sellers at this stage of the proceedings.

### 5.    Defendant Bateman

Defendant Bateman is the current Institutional Program Manager at Green Rock. Id. ¶ 8. According to Hoglan's allegations, Bateman played a role in implementing or enforcing the Mathena Prohibition after it was ordered. Hoglan alleges that he has obtained a copy of an email exchange between Wade and Bateman, in which Bateman instructed Wade as follows:

> When you talk to Hoglan don't tell him . . . Robinson told us to do it. Just go over it and if he signs it give him a copy and file. If he asks why it is being done outside of the Annual Review period explain that a Case Plan can be changed anytime. Let me know how it goes and I will tell . . . Davis [it] is done SMILEYFACE Thanks!

Id. ¶ 67.

As was true with Wade, the court concludes that Hoglan's allegations do not plausibly suggest that Bateman retaliated against Hoglan for filing the 694 case or engaging in any other protected activity. Therefore, Count Two will be dismissed as to Wade. However, because the allegations indicate that Bateman played a role in implementing or enforcing the Mathena Prohibition, the remaining claims against Bateman (the procedural due process claim in Count One and the First Amendment violations asserted in Count Three) will be allowed to proceed.

### C.    Summary of Rulings on Defendants' Motion for Summary Judgment

For these reasons, the defendants' motion for summary judgment, ECF No. 67, is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. To the extent the motion seeks dismissal for failure to state a claim, the motion is **GRANTED** as to the following claims: the substantive due process claims asserted in Counts One and Eight; the retaliation claims asserted in Counts Four, Five, Six, Seven, Ten, Eleven, and as part of

Counts Thirteen and Sixteen; and the disciplinary-related due process claims asserted in Counts Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen. Additionally, Count One is dismissed as to Defendant Perry; Count Two is dismissed as to Defendants Perry, Booker, Wade, and Bateman; and Count Three is dismissed as to Defendant Perry. Because no claims remain against Defendants Perry, Crumpler, Elam, Ponton, Sims, and the John Doe investigator, they will be terminated as parties in this action. As to all other claims, the defendants' motion is **DENIED WITHOUT PREJUDICE** to refiling. The remaining claims are the vagueness/procedural due process claims asserted in Counts One, Eight, and Fifteen; the First Amendment retaliation claim asserted in Count Two; and the First Amendment claims asserted in Counts Three and Nine.

## II.   Hoglan's Motion for Relief under Rule 56(d)

For the claims that remain pending, the court concludes that outstanding discovery renders summary judgment premature. Accordingly, Hoglan's motion for relief under Rule 56(d), ECF No. 86, is **GRANTED IN PART AND DENIED IN PART**. The parties will be given **60 days** to "obtain affidavits or declarations or to take discovery" relevant to the remaining claims. Fed. R. Civ. P. 56(d). The defendants will be given **75 days** to file a renewed motion for summary judgment.

## Conclusion

For the reasons discussed above, the defendants' second motion for summary judgment, ECF No. 67, is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**, and Hoglan's motion for relief under Rule 56(d), ECF No. 86, is **GRANTED IN PART AND DENIED IN PART**.   An appropriate order will be entered.

Entered: March 3, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.03.03 08:18:51
-05'00'

Michael F. Urbanski
Chief United States District Judge

40