IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUGLAS A. HOGLAN,<br>    Plaintiff,<br><br>v.<br><br>RANDALL MATHENA, et al.,<br>    Defendants. | Case No. 7:18-cv-00140<br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

**MEMORANDUM OPINION**

Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Curly Sellers and other individuals employed by or associated with the Virginia Department of Corrections ("VDOC"). The matter is presently before the court on Sellers' motion for summary judgment, ECF No. 182. The motion has been fully briefed, and the court heard oral argument on January 27, 2023. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

          **I.**        **Procedural History**

On April 13, 2020, Hoglan filed a second amended complaint against Sellers and other defendants, asserting violations of his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. The operative pleading contained several claims for which Sellers was named as a defendant, including the claims asserted in Counts Eight and Nine. In Count Eight, Hoglan alleged that Sellers and other defendants "failed to provide . . . constitutional due process 'fair warning' and an 'ascertainable standard' for those charged with enforcing" an Individualized Rehabilitation Plan ("IRP") implemented in November 2017,

which prohibited Hoglan from reviewing and possessing certain types of images and other materials. 2d Am. Compl., ECF No. 59, at ¶ 183. In Count Nine, Hoglan alleged that Sellers and other defendants violated his constitutional rights "by seizing and/or unlawfully prohibiting [him from possessing] certain First Amendment protected materials, under the IRP." Id. ¶ 184 As part of both claims, Hoglan alleged that "[t]hose defendants in supervisory roles were aware of the pervasive risk to Hoglan's rights, and failed to remedy the violations either by deliberate indifference or through tacit authorization." Id. ¶¶ 183–84.

On March 3, 2022, the court issued a memorandum opinion and order granting in part and denying without prejudice in part a motion filed by Sellers and other defendants that sought dismissal of certain claims and defendants for failure to state a claim upon which relief may be granted. The claims remaining as to Sellers are the procedural due process claim asserted in Count Eight and the First Amendment claim asserted in Count Nine. The defendants had previously moved to dismiss those claims against Sellers on the basis that Hoglan had failed to adequately allege that Sellers was personally involved in the alleged violations of his constitutional rights. However, based on the allegations in the second amended complaint, including the assertion that Sellers was responsible for signing the IRP, the court permitted these claims to proceed against Sellers. See Mem. Op., ECF No. 101, at 37 ("Because the allegations plausibly suggest that Sellers played a role in implementing and enforcing the IRP, these claims will be allowed to proceed against Sellers at this stage of the proceedings.").

Sellers now moves for summary judgment on the remaining claims. The motion is accompanied by several exhibits, including a declaration from Sellers, her VDOC Employee

Work Profile, and the IRP signed by Sellers and others in November 2017. Based on the evidence presented, Sellers argues that no reasonable jury could find that she was personally responsible for the alleged constitutional deprivations or that she is subject to supervisory liability under § 1983. Hoglan has filed a response in opposition to the motion, Sellers has replied, and the motion is ripe for review.

## II.     Factual Background

The following facts are either undisputed or presented in the light most favorable to Hoglan. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Hoglan is a convicted sex offender and an inmate in the custody of the VDOC. Hoglan Decl., ECF No. 211-1, at ¶¶ 2, 4. At the time of the events in question, he was incarcerated at Green Rock Correctional Center ("Green Rock"), where Sellers was employed as the Chief of Housing and Programs. Id. ¶ 2; see also Sellers Decl., ECF No. 183-1, at ¶ 4.

On November 1, 2017, Hoglan learned that he would be subject to a new IRP. 2d Am. Compl. ¶ 116. The IRP contained the following restrictions:

> Mr. Hoglan is prohibited from viewing or possessing any publications, materials, drawings, or photos which may be detrimental to his Individualized Rehabilitation Plan (IRP), or which may or could promote sexually deviant behaviors per [VDOC Operating Procedure] 803.2, item IV, A.4, "(publications that) Contain nudity or any sexually explicit acts, including child pornography or sexual acts in violation of state or federal law." This includes, but is not limited to, viewing and possessing materials, including drawings, of anyone who appears to be under the age of 18, nude or semi-nude females, females touching themselves or each other, or any pornographic materials.

3

IRP, ECF No. 183-1, at 14.[1] Under the heading "Staff Interventions," the IRP listed the following staff members responsible for monitoring Hoglan's compliance with the IRP:

> 1. <u>The QMHP Senior or designee</u> will monitor Mr. Hoglan's compliance with this IRP. Any violations of this IRP will be addressed directly with Mr. Hoglan.
>
> 2. <u>Counselors</u> will be responsible for monitoring and working with Mr. Hoglan to ensure that he complies with his IRP and to report any non-compliance to the QMHP Senior, or designee, immediately. Counselors will also enter this IRP into CORIS.
>
> 3. <u>Mailroom personnel</u> will monitor for any publications, materials, drawings, or photos of anyone who appears to be under the age of 18 or any pornographic materials in Mr. Hoglan's possession at any time or received by him, and will notify the QMHP Senior, or designee, immediately. The publications, materials, drawings or photos of anyone who appears to be under the age of 18 or pornographic materials will be held by mailroom personnel and forwarded to the QMHP Senior or designee.
>
> 4. <u>Security staff</u> will search Mr. Hoglan['s] cell periodically for any publications, materials, drawings or photos of anyone who appears to be under the age of 18 or pornographic materials. The publications, materials, drawings or photos of anyone who appears to be under the age of 18 or pornographic materials will be considered contraband and a 224 Possession of Contraband charge will be filed if found in his possession. The publications, materials, drawings or photos will be forwarded to the QMHP Senior or designee.
>
> 5. <u>Property staff</u> will monitor all incoming orders to Mr. Hoglan that appear to contain publications, materials, drawings or photos of anyone who appears to be under the age of 18 or pornographic materials. The publications, materials, drawings or photos of anyone who appears to be under the age of 18 or pornographic materials will be held by property staff and forwarded to the QMHP Senior or designee.

---

[1] Page citations associated with the exhibits docketed at ECF No. 183-1 refer to the pagination generated by the court's CM/ECF system.

Id. at 14–15.

The IRP included spaces for the "Offender Signature," "Witness Signature," "IPM Signature," "Counselor Signature," and "QMHP Senior/Designee Signature." Id. at 15. On November 1, 2017, Sellers signed the IRP in her capacity as the supervisor of the Institutional Programs Manager ("IPM") at Green Rock. Sellers Decl. ¶ 6. In the space for the "IPM Signature," Sellers wrote her name and title. IRP, ECF No. 183-1, at 15.

The record indicates that defendant Heather Boyd, a Qualified Mental Health Professional, was responsible for drafting the IRP. See Boyd Aff., ECF No. 68-2, at ¶¶ 1, 4, 26 ("I am a Psychology Associate Senior . . . (also known as a Qualified Mental Health Professional or 'QMHP') . . . . I drafted the November 1, 2017 treatment plan."). The IRP included a footnote indicating that it was "created and implemented in consultation with the DOC Regional Sex Offender CSOTP [Certified Sex Offender Treatment Provider], and the Regional Mental Health Clinical Supervisor." IRP, ECF No. 183-1, at 15.

According to the declaration filed in support of the pending motion, Sellers "played no role in the creation or development" of the IRP, and she "had no ability to amend or revise" the IRP in her position as Chief of Housing and Programs. Sellers Decl. ¶¶ 8–9. Sellers does not have a degree in psychology or psychiatry, and she is not licensed to provide mental health treatment. Id. ¶ 7. Sellers' declaration also indicates that she "was not personally involved in the removal or confiscation of any materials that are the subject of this lawsuit" and that she "was not kept informed or made aware of any removal or confiscation of any materials that are the subject of this lawsuit." Id. ¶¶ 9–11.

The Employee Work Profile for Sellers' position as Chief of Housing and Programs indicates that she was responsible for supervising Unit Managers to ensure that inmate housing areas operated in accordance with safety procedures and "cognitive community or other population management protocol." Employee Work Profile, ECF No. 183-1, at 5. She was also responsible for supervising the Institutional Programs Manager to ensure that inmate "classification processes and therapeutic programming and services" were delivered to inmates. Id. Sellers was expected to have "[e]xtensive working knowledge of VADOC operational policies, procedures and practices in the institutional setting" and the "ability to complete reports and/or write policies and procedures." Id. at 6. Sellers was not required to have a degree in psychology or counseling to be employed as the Chief of Housing and Programs, id., and her Employee Work Profile did not list any responsibilities specific to the assessment, treatment, or rehabilitation of sex offenders.

Hoglan's declaration indicates that he witnessed Sellers being involved with "rehabilitative services and programs" in her position of Chief of Housing and Programs. Hoglan Decl., ECF No. 211-1, at ¶ 17. With respect to programs offered to sex offenders, Hoglan states that he saw her "visit" a sex offender program in the past. Id.

### III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673

6

F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248–49).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the [nonmovant].'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (alteration in original) (quoting Anderson, 477 U.S. at 252). "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks and citation omitted).

## IV. Discussion

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and citations omitted). Under § 1983, there is no doctrine of respondeat superior or vicarious liability. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–694 (1978)). State officials "may be liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." Timpson v. Anderson Cty. Disabilities & Special Needs Bd., 31 F.4th 238, 257 (4th Cir. 2022) (citing Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)). In other words, a plaintiff must prove that the named official is personally liable for an alleged constitutional violation or that the official is subject to

7

supervisory liability for the constitutional injuries inflicted by subordinate employees. Id.; see also Campbell v. Florian, 972 F.3d 385, 398 (4th Cir. 2020).

### A.     Personal Liability

"To establish personal liability under § 1983 . . . , the plaintiff 'must affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights.'" Williamson, 912 F.3d at 171 (alteration in original) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" Id. (quoting Iqbal, 556 U.S. at 676). Notably, "mere knowledge of such a deprivation does not suffice." Id. (citing Wright, 766 F.2d at 850). Instead, a plaintiff must prove that the official was "personally involved" in the alleged constitutional deprivation. Id. at 172.

Having reviewed the record, the court concludes that there is insufficient evidence from which a reasonable jury could find that Sellers was personally involved in the alleged deprivations of Hoglan's due process and First Amendment rights. The remaining claims against Sellers arise from the imposition and enforcement of the IRP. Although Sellers signed the IRP in her capacity as Chief of Housing and Programs, Sellers has attested that she played no role in drafting or developing the IRP, and there is no evidence that contradicts her sworn statement. Nor is there any evidence to contradict her sworn statement that she was not personally involved in the removal or confiscation of any materials that are the subject of this action and therefore played no role in enforcing the restrictions set forth in the IRP. Sellers' declaration is consistent with the terms of the IRP, which specifically provided that the "QMHP Senior or designee" would be responsible for monitoring Hoglan's compliance with

8

the IRP and that counselors, mailroom personnel, security staff, and property staff would be required to report any non-compliance to the "QMHP Senior or designee," rather than the Chief of Housing and Programs. In the absence of any evidence indicating that Sellers actively participated in drafting, implementing, or enforcing the IRP, as opposed to merely signing the document, the court concludes that Hoglan is unable to establish that Sellers was personally involved in the alleged constitutional violations. See, e.g., Keller v. Pa. Bd. of Prob. & Parole, 240 F. App'x 477, 480 (3d Cir. 2007) (affirming the grant of summary judgment to the Secretary of the Parole Board where the plaintiff failed to show that the Secretary participated in the actions at issue, and noting that the mere fact that the Secretary's signature appeared at the bottom of the Parole Board's decision was insufficient to establish personal involvement); Harnage v. Dzurenda, No. 3:14-cv-00885, 2022 WL 972438, at *9 (D. Conn. Mar. 31, 2022) (holding that a defendant's signature on an agreement was insufficient to establish that she was personally involved in the alleged constitutional violation where there was no evidence demonstrating that the defendant participated in formulating the terms of the agreement). In these circumstances, no reasonable juror could find that Sellers' "own individual actions" violated Sellers' constitutional rights. Iqbal, 556 U.S. at 676.

### B.  Supervisory Liability

To the extent that Hoglan seeks to impose liability against Sellers on the basis of her position as Chief of Housing and Programs, the court concludes that his claims fare no better. The mere fact that Sellers attended programs offered to sex offenders or supervised the Institutional Programs Manager or other staff members listed in the IRP does not provide a basis for liability under § 1983. See Iqbal, 556 U.S. at 676 (emphasizing that vicarious liability

9

is "inapplicable" to § 1983 actions); see also Campbell, 972 F.3d at 399 ("[A] § 1983 plaintiff must show more than mere supervision."). Under existing precedent, a supervisory official can be held liable for the actions or inactions of a subordinate only under certain "limited" circumstances. King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016). Specifically, a plaintiff "must satisfy three elements to establish supervisory liability under § 1983":

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Timpson, 31 F.4th at 257 (quoting Shaw, 13 F.3d at 799); see also Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

"As to the first element, [e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.'" Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw, 13 F.3d at 799). "To prove 'deliberate indifference' under the second element, the plaintiff typically must show a supervisor's 'continued inaction in the face of documented widespread abuses.'" Timpson, 31 F.4th at 258 (quoting Slakan, 737 F.2d at 373). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799 (internal quotation marks and citations omitted).

Against this backdrop, the court concludes that Hoglan has not presented sufficient evidence to survive summary judgment on a claim of supervisory liability against Sellers. There is no evidence from which a reasonable jury could find that Sellers knew or should have known that subordinate employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Hoglan. Moreover, the mere fact that Sellers signed Hoglan's IRP in her capacity as Chief of Housing and Programs is insufficient to establish that she was deliberately indifferent to or tacitly authorized unconstitutional acts allegedly committed by subordinate employees. See, e.g., Campbell, 972 F.3d at 398–99 (holding that the mere fact that a supervisory official approved a memorandum prepared by a subordinate employee fell short of the showing required to impose supervisory liability under § 1983). Finally, the court notes that the conclusory assertion that Sellers and other defendants in supervisory positions "were aware of the pervasive risk to [his] rights, and failed to remedy the violations either by deliberate indifference or through tacit authorization," 2d Am. Compl. ¶¶ 183–84, is insufficient to withstand summary judgment. See, e.g., Thompson v. Commonwealth, 878 F.3d 89, 110 (4th Cir. 2017) (affirming the grant of summary judgment on a supervisory liability claim where the claim was supported by conclusory allegations and not specific facts).

## V.   Conclusion

For these reasons, the court concludes that the record is devoid of evidence from which a reasonable jury could find that Sellers was personally responsible for the constitutional violations alleged in Counts Eight and Nine or that she is subject to supervisory liability under

11

§ 1983.[2] Accordingly, Sellers' motion for summary judgment, ECF No. 182, is **GRANTED**.

An appropriate order will be entered.

Entered: January 31, 2023

Michael F. Urbanski
Chief United States District Judge

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2023.01.31 09:18:20 -05'00'

---

[2] In light of the court's conclusions, the court finds it unnecessary to address the alternative arguiments raised in support of Sellers' motion for summary judgment.

12